**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 24, 2025

Michael A. Barlow, Esquire
Quinn Emanuel Urquhart & Sullivan, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801

David E. Wilks, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805

RE:  *Shareholder Representative Services, LLC v. Alexion Pharmaceuticals, Inc.,*
Civil Action No. 2020-1069-MTZ

Dear Counsel,

As you know, I issued a post-trial opinion on September 5, 2024, that left unresolved each side's claims based on problems in drug materials, including whether materials Alexion received from Syntimmune were not manufactured in compliance with regulations and FDA guidance governing good manufacturing practices ("cGMP") as Section 4.13(a) of the Merger Agreement required.[1] On September 10, I wrote you suggesting a court-appointed expert might be helpful to the Court in adjudicating the questions of (1) whether the Syntimmune drug product lots and drug substance batches Alexion has identified were manufactured "in compliance in all material respects" with the regulations and guidance Alexion has identified, and (2) whether the lots and batches identified were "for human use or anticipated to be for human use."[2] I ordered the parties to show cause as to why such an expert should not be appointed under Delaware Rule of Evidence 706.[3]

Alexion accepted that invitation; SRS asked the Court to proceed with appointing an expert.[4] That briefing closed on December 12, 2024. I appreciate the parties' input.

---

[1] *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2024 WL 4052343 (Del. Ch. Sept. 5, 2024). This letter uses terms defined in that opinion.

[2] Docket item ("D.I.") 381 at 3 (quoting Merger Agr. § 4.13(a)).

[3] *Id.* at 2.

[4] D.I. 389; D.I. 390; D.I. 394.

Alexion's argument that question (2) is a question of contract interpretation, and not one requiring specialized expertise, is well taken. I will not appoint an independent expert for that purpose. My ruling on that discrete issue will follow.

I remain convinced that a court-appointed expert would be helpful in resolving question (1). Alexion made two arguments against doing so. The first is that the materiality of any noncompliance is a legal question for the Court, which Alexion gauges by the real-world consequences of noncompliance.[5] Another way to think about materiality of noncompliance is the degree of noncompliance, i.e., how far the situation strayed from cGMP. Under that perspective, an expert familiar with the regulatory baseline, and how far a situation was from that baseline, would be helpful. Either way, the Court will make its own decision.

Alexion's second argument is a procedural one. Alexion argues a D.R.E. 706 expert should not be appointed after trial. It points to hornbook encouragement to appoint such an expert before trial, and equates appointing one afterwards to reopening the record under Court of Chancery Rule 59(a), which it argues is not supported here.[6] SRS has no issue with proceeding with a D.R.E. 706 expert after trial.

At bottom, appointment of a D.R.E. 706 expert is within the trial court's discretion.[7] As the Delaware Supreme Court put it, "The Advisory Committee to the federal rules has noted that '[t]he inherent power of a trial judge to appoint an expert of his own choosing is virtually unquestioned.'"[8] The Court can appoint such an expert once "it becomes apparent that a case involves complex technical issues"

---

[5] D.I. 389 ¶¶ 6–9.

[6] *Id.* ¶¶ 10–12 (citing 29 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 6305 (2d ed.) [hereinafter "Wright & Miller"]; 4 Weinstein's Federal Evidence § 706.03 (2024)).

[7] *See In re Appraisal of Shell Oil Co.*, 607 A.2d 1213, 1223 (Del. 1992) ("The selection of the expert is solely within the discretion of the trial judge."); *Gamles Corp. v. Gibson*, 2009 WL 826520, at *1 (Del. Super. Ct. Mar. 31, 2009) ("D.R.E. 706 grants this Court authority to appoint an expert and divide the expert's costs among the parties.").

[8] *Shell Oil*, 607 A.2d at 1222 (quoting Fed.R.Evid. 706 advisory committee's note to 1972 proposed rules).

that requires expert assistance.[9]   While a D.R.E. 706 expert should be appointed before trial "[w]here at all possible,"

> the need to appoint an expert often is not apparent to the court until trial has commenced.  In such a case, the court may still have discretion to appoint an expert if it can reasonably accommodate the trial schedule with the procedures described in the rule.  But where it is simply too late to effectively and fairly implement these procedures, appointment of an expert under Rule 706 may be an abuse of discretion.[10]

Recognizing that appointing a D.R.E. 706 expert after trial is unusual and disfavored, I believe it is still appropriate and within my discretion here.  I raised the idea as soon as it became apparent to me that such an expert would be helpful.  This case unfolded as many Chancery cases do:  with little opportunity for the trial judge to identify and understand the triable issues until trial itself.  I heard evidence and expert testimony on the issue for the first time at trial; as SRS pointed out, that presentation was abbreviated.[11]  I engaged with the issue for the first time with the benefit of the parties' post-trial briefing and argument.  I worked through what I could, issued a 140-page post-trial opinion, and asked about an expert five days later.  And the trial phase is not yet over:  when I issued my post-trial ruling on liability, I asked for additional briefing on damages, which the parties provided and which will be presented at another post-trial argument on March 4, 2025.  I do not believe it is "simply too late" to engage the assistance of a court-appointed expert.[12]

I trust the parties can work out the particulars.  SRS's proposed order is acceptable to the Court; I ask the parties to confer and offer a jointly stipulated proposed order.  I also ask the parties to stipulate to a list of three willing experts for the Court's consideration.

---

[9] Wright & Miller § 6305.

[10] *Id.*

[11] D.I. 390 ¶ 4.

[12] Wright & Miller § 6305.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor


MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*